UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE MARIE ACOSTA,                    Case No. 17-12414

     Plaintiff,                      Sean F. Cox
v.                                     United States District Judge

COMMISSIONER OF SOCIAL                 Stephanie Dawkins Davis
SECURITY,                              United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 20)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On September 26, 2016, plaintiff Julie Acosta, proceeding *pro se*, filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for disability benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 18, 20).  Plaintiff also filed a reply in support of her motion for summary judgment.  (Dkt. 21).

B.     Administrative Proceedings

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on April 23, 2014, alleging disability beginning on May 24, 2012.  (Tr. 24).[1]  Plaintiff amended the alleged onset date to January 21, 2014.  (Tr. 29).  The claims were initially disapproved by the Commissioner on August, 2014.  (Tr. 24).  Plaintiff requested a hearing and on December 1, 2015, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Paul W. Jones, who considered the case *de novo*.  (Tr. 38-79).  In a decision dated December 21, 2015, the ALJ found that plaintiff was not disabled. (Tr. 21-33).  Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 23, 2016, denied plaintiff's request for review.  (Tr. 5-10); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 13.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

Plaintiff was 37 years old on the amended alleged disability onset date.  (Tr. 28).  She lives with her husband and three children.  (Tr. 56).  She has past relevant work as a loan officer (skilled and sedentary) and a party store clerk-cashier (unskilled and light).  (Tr. 32).  Plaintiff's application is based on her claims of back injury/chronic pain, narcolepsy, arthritis, asthma/COPD, sleep apnea, carpel tunnel and migraines.  (Tr. 99).  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date.  (Tr. 26).  At step two, the ALJ found that plaintiff's obesity was "severe" within the meaning of the second sequential step. (Tr. 26).  The ALJ found that plaintiff's sleep apnea, chronic obstructive pulmonary disease, asthma, narcolepsy, lumbar spine degenerative disc disease, and right carpal tunnel syndrome were non-severe.  (Tr. 27).  However, at step three, the ALJ found no evidence that plaintiff's impairments, severe and non-severe, singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 27).

Thereafter, the ALJ assessed plaintiff's residual functional capacity (RFC) to perform medium work.  (Tr. 27).  At step four, the ALJ found that plaintiff was able to perform her past relevant work as a loan officer or party store cashier.  (Tr. 32).  In the alternative, the ALJ found at step five that plaintiff could perform a

limited range of sedentary work[2] and based on the vocational expert testimony,

plaintiff could perform the jobs assembler, inspector, and packer.  (Tr. 33).

Therefore, the ALJ found that plaintiff was not disabled from the amended alleged

onset date through the date of the decision.  (Tr. 33).

## III.   DISCUSSION

###   A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

---

[2] The reference to "sedentary" by the ALJ appears to be a scrivener's error as the jobs identified fall into the medium work category, as the vocational expert testified during the hearing.  (Tr. 67).

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

>    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

>    inability to engage in any substantial gainful activity by
>    reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Step Two

Plaintiff first alleges that the ALJ improperly fixated on a diagnosis of obesity, and ignored her lumbar and cervical spine conditions.  Plaintiff contends that her lumbar and cervical spine conditions were medically determinable impairments that were severe under the governing regulations.  She points out that her treating physician, Dr. Deshpande, diagnosed her with cervical intervertebral disc disease, low back pain, lumbar spine radiculopathy, and brachial neuritis or radiculitis.  (Tr. 366-368).  These diagnoses were based on a multitude of examinations and tests, which were documented in the record.  (Tr. 338, 340).  Dr. Deshpande continued plaintiff's treatment regimen of Methadone, Percocet, and Flexeril.  (Tr. 366-368).  He also opined that she is severely limited from the ability to perform sedentary activity, that sitting or standing for any extended period of time may lead to an intermittent need to lie down during the day and stretch for 15-30 minutes.  He also opined that because of her neck, pushing, pulling, keeping the head and neck immobile to work on a computer screen would increase her pain symptoms and intermittently prevent her from performing work activities.  He further opined that plaintiff's medication, in particular the narcotics, may limit her ability to have full cognitive capacity at times and thus impair her ability to perform some higher level sedentary activities.  (Tr. 366).

Plaintiff maintains that Dr. Deshpande's opinions are supported by the other evidence in the record, including the treatment records of Dr. Wylie, who diagnosed cervical spine pain, noted problems with chronic narcolepsy, sleep apnea, and chronic pain due to trauma. Dr. Wylie increased plaintiff's pain medications and referred her to physical therapy. (Tr. 314-315). Plaintiff asserts that her physical therapy records document her low back pain and neck pain with radiation into the right arm. (Tr. 293-302). Her examinations showed increased thoracic kyphosis and cervical and lumbar lordosis. *Id*. There was demonstrable pain with range of motion testing, as well as decreased patellar and Achilles reflexes, decreased flexibility in the hamstrings, hip flexors, and rectus femorsis, a mildly positive slump test, tenderness to palpitation of the lumbar paraspinal and gluteus muscles, and tightness and pain to the right cervical spine. *Id*. On February 19, 2014, plaintiff treated with nurse practitioner Jennifer Dubnicki from Dr. Wylie's office. The physical examination showed moderate pain with motion of the thoracic spine increased pain with flexion of the lumbar spine. (Tr. 310-313). One month later, plaintiff saw Dr. Wylie, who noted that, despite physical therapy, she showed "very little symptomatic improvement." (Tr. 307-309). Dr. Wylie opined that plaintiff "is unable to work at her previous positions which required sit stand throughout the day." (Tr. 307).

Plaintiff points out that there is no medical evidence in the record that contradicts the conclusions of her treating physicians and thus, no evidence on which to base a finding that her impairments were non-severe or not medically determinable.  Furthermore, in concluding that plaintiff's other impairments were non-severe, the ALJ cited Exhibits C1F-C14F, which plaintiff notes are, in fact, not contained in the administrative record.[3]  Thus, plaintiff asserts that the ALJ did not cite any medical records to substantiate his finding that plaintiff's other impairments were non-severe and as such the analysis is insufficient to allow the court to perform its review.  Accordingly, plaintiff maintains that the ALJ's step two analysis was not based on evidence in the record, which demonstrates how her lumbar and cervical spine conditions significantly impacted her physical and cognitive functioning.  (Tr. 31-315, 366-368).

In response, the Commissioner argues that because the ALJ considered plaintiff's lumbar and cervical degenerative disc disease during the remaining steps of the disability determination, the failure to find additional severe impairments at

---

[3] This too appears to be a scrivener's error and the ALJ likely meant B1F-B14F, which are plaintiff's medical records.  *See* Court Transcript Index, Dkt. 13-1, Pg ID 45-46.  The undersigned notes, however, that the ALJ's reference to <u>all</u> of plaintiff's medical records in support of his conclusion that plaintiff's spinal condition was "reportedly mild" and therefore is non-severe is unhelpful to the court's review of the decision.  (Tr. 27).  Further, it is difficult to square plaintiff's treatment with multiple pain medications, including narcotics like Percocet and Methadone, along with Dr. Deshpande's suggestion of neck and lumbar injections (Tr. 340) and unsuccessful course of physical therapy with the ALJ's conclusion that plaintiff's spinal conditions were "non-severe."

step two is not a reversible error. *Fiske v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th

Cir. 2007). Specifically the Commissioner points out that at step two, the ALJ

discussed the fact that plaintiff's lumbar spine degeneration was reportedly mild.

(Tr. 27). And, at step three, the ALJ determined that plaintiff did not have an

impairment or "combination of impairments" that met or medically equaled a listed

impairment. (Tr. 27 Finding 4). The Commissioner also asserts that the ALJ

considered plaintiff's complaints of neck and back pain (Tr. 28-30), her treatment

for these complaints (Tr. 29-30), and her diagnoses of neck and lower back pain

with degenerative disc disease in determining plaintiff's RFC. (Tr. 29). The ALJ

also pointed out that imaging of plaintiff's musculoskeletal system did not show

any abnormalities caused by obesity (Tr. 28), and that despite her complaints of

musculoskeletal pain, her treatment was relatively conservative and the medical

evidence was generally unremarkable. (Tr. 30). The Commissioner maintains that

this discussion shows that the ALJ considered plaintiff's alleged lumbar and

cervical degenerative disc disease in determining her RFC. It also shows that

plaintiff's initial focus on whether the ALJ erred at step two is misplaced. *See*

*Chicora v. Comm'r of Soc. Sec.*, 2016 WL 4746223, at *12 (E.D. Mich. Aug. 8,

2016) ("[H]aving considered depression at Step 4, any error at Step 2 as to the

severity of Plaintiff's depression was rendered harmless." (citations omitted)),

report and recommendation adopted, 2016 WL 4729661 (E.D. Mich. Sept. 12,

2016).  The Commissioner also argues that it refutes plaintiff's argument that the ALJ "assumed . . . no limitations from Plaintiff's lumbar and cervical spinal conditions" when determining her RFC.  In sum, the Commissioner posits that substantial evidence supports the RFC, given that the various medical examinations showed no significant cervical or lumbar abnormalities.  (Dkt. 20, pp. 8-9).

At step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in

the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

Plaintiff's contention that the ALJ's step two analysis is not supported by citations to the record evidence, is well-taken.  At step two, the term "significantly" is liberally construed in favor of the claimant.  The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."  20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims."  *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir. 1985).  The Sixth Circuit has construed the step two severity regulation as a "*de minimis* hurdle" in the disability determination process.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe."  SSR 96-3p (July 2, 1996).  A

court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (relying on *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2014)); *see also Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824 (E.D. Mich. March 28, 2017) (Patti, M.J.) (ALJ's decision "fails to provide an accurate and logical bridge between the evidence and the result.'") (citing *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, *6 (E.D. Mich. Jan. 6, 2011)).  The entirety of the ALJ's step two analysis is as follows:

> Besides the above-mentioned severe impairment, I find claimant's sleep apnea, chronic obstructive pulmonary disease (COPD), asthma, narcolepsy, lumbar spine degenerative disc disease, and right carpal tunnel syndrome (CTS) non-severe.  The record does not reflect that these ailments interfered with her ability to perform basic work activities, either exertional or non-exertional (20 CFR 404.1521 and 416.920).  Her COPD, asthma, narcolepsy, and sleep apnea appeared well controlled with treatment or non-compliance.  Her lumbar spine degeneration was reportedly "mild" and her right CTS received only modest treatment.  Without a significant limitation to her ability to perform physical basic work activities, I find the impairments listed above non-severe (Ex. C1F-C14F).

(Tr. 27).  The ALJ's analysis does not provide a sufficient basis for the Court to review his step two analysis.  Indeed, the Commissioner has made no serious

attempt to defend the adequacy of this portion of the analysis, opting instead to essentially argue that any such err is harmless.  However, the ALJ does not connect the dots between the medical evidence and the conclusion that plaintiff's spinal impairments (and indeed all of plaintiff's other impairments) are non-severe.  The general reference to the entirety of plaintiff's medical records falls short of the considered examination necessary to allow the court to follow the bridge between the evidence and the ALJ's conclusion.

The dearth of analysis at step two is not inconsequential; as alluded to in footnote 3, plaintiff's treatment for her spinal disorder has included various modalities including prescription narcotics and physical therapy with varying effectiveness.  Specifically, plaintiff was prescribed strong pain medications including Methadone and Percocet for back pain over a sustained period of time, which is arguably suggestive of a severe spinal impairment.[4]  And, while the records suggest plaintiff's pain is "usually managed" by her medications, this would not seem to render plaintiff unable to overcome the *de minimis* hurdle of step two, given that plaintiff continued to experience muscle spasms despite physical therapy, requiring the addition of Flexeril to her medication regimen, and experienced 5/10 pain levels with medication.  (Tr. 310).  Further, as

---

[4] Plaintiff's medical records indicate that she has been taking Methadone and Percocet since 2011.  (*See e.g.*, Tr. 104-116, 270, 307-308, 310-311, 346).

acknowledged by the ALJ, plaintiff's physical therapy was placed on hold because it was not effective in resolving plaintiff's neck and back pain.  (Tr. 29, 71, 287).  She also received a suggestion for injections by Dr. Deshpande.  (Tr. 108, 340)  Significantly, plaintiff's 2011 MRI shows: "Mild, smooth accentuation of the lower thoracic kyphosis, associated with mildly reduced anterior height of T10 and T11 vertebral bodies, both of which appear to be chronic configurations.  Mild to moderate focal stenosis of the thecal sac adjacent to the T10-T11 disc margin.  Articular facts and reduced laminar angle contribute to this stenosis."  (Tr. 342).  Yet, the ALJ does not mention the MRI or plaintiff's stenosis anywhere in his opinion.  Under these circumstances, the undersigned finds that the scarcity of analysis at step two necessarily results in error.

Notwithstanding any error at step two, Sixth Circuit precedent establishes that failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.  *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).  If the ALJ continues with the remaining steps, any such error is harmless, as long as the ALJ considered the effects of all medically determinable impairments, including those deemed nonsevere.  *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. 2013) ("The Commissioner is correct that the failure to find that additional

impairments are severe is not in itself cause for reversal.  But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.") (internal quotation marks omitted); *Jackson v. Astrue*, 734 F.Supp.2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

The ALJ did continue through the remaining steps of the analysis here, though the analysis of plaintiff's impairments in relation to the Listings at step three is rather thin.  In that regard, the decision states as follows:

> Individually or in combination, the medical evidence does not document impairments of listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination. I evaluated the signs, symptoms, and laboratory findings of claimant's *severe* impairments, finding that they do not meet or medically equal in severity or duration the criteria of any impairment found in 20 CFR, Part 404 Subpart P, Appendix 1 (Listing of Impairments).

(Tr. 27) (emphasis added).  As emphasized, though the opening statement in the analysis broadly declares plaintiff's "impairments" do not reach listing level severity, the ALJ's evaluation by its own terms seems to limit itself to plaintiff's *severe* impairments.  The ALJ neither mentioned nor discussed a particular Listing.

Nevertheless, plaintiff does not challenge the ALJ's Step three analysis. Moreover, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 Fed. Appx. 639, 641 (6th Cir. 2013)).  However, an ALJ must consider and discuss a relevant listing when the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id*. (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).  In order to raise a "substantial question," a claimant "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Id. see also Dew v. Comm'r of Soc. Sec.*, 2017 WL 744238 at *2 (E.D. Mich. Feb. 27, 2017).  Without this specific evidence, an ALJ does not "commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson*, 579 Fed. Appx. at 433; *see also Roberts v. Comm'r of Soc. Sec.*, 2017 WL 5501323 at *10 (N.D. Ohio Oct. 19, 2017); *Andres v. Comm'r of Soc. Sec.*, 2017 WL 3447849 *16 (N.D. Ohio July 11, 2017).  Thus, while plaintiff's neck and back impairments are not directly addressed in the Step three, the court's inquiry advances to determine whether these impairments were considered at later stages of the analysis.  And, as discussed below, they were.

As the Commissioner points out, the ALJ discussed plaintiff's neck and back impairments in fashioning the RFC.   Indeed, the ALJ acknowledged that plaintiff received physical therapy for neck and back pain, as well as the fact that her pain was managed well with Percocet and Methadone.  (Tr. 29).  The decision noted objective findings in the record also, including that plaintiff's physical examination showed no cervical or thoracic spine tenderness and that she experienced normal mobility and curvature, but moderate pain with flexion of the lumbar spine. (*Id*.) The ALJ noted that Dr. Wylie described no acute distress and continued to recommend largely conservative remedies.  (Tr. 29, 309).  The ALJ also took into account the records of Wayne State Physician's Group which showed that while plaintiff showed pain with palpation of the lumbar spine, her straight leg raise test was negative; she had full range of motion of her neck with some pain and numbness in the shoulders and upper arms.  She was also observed to sit, walk and heel/toe walk without difficulty.  (Tr. 29, 340).  Her records from Dexter Internal Medicine also described her to be in mild distress in relation to her cervical spine pain; and an inspection of her back revealed no abnormalities, no evidence of joint deformity, normal musculature and extremity range of motion.  (Tr. 28, 312). Thus, the ALJ's discussion of the medical records relating to plaintiff's back and neck pain provide substantial evidence for his conclusions respecting her limitations.  Moreover, the RFC was incorporated into the ALJ's analysis at Steps

4 and 5.  (Tr. 32-33, 67).   Because the ALJ took these impairments into

consideration at these later stages of the analysis, any error at step two is not

reversible.  Furthermore, while plaintiff cites to evidence which she believes

supports a different RFC, it is not the Court's role to reweigh the evidence or to

determine whether there is substantial evidence to support a different conclusion.

*See Smith v. Comm'r of Soc. Sec.*, 2011 WL 3417113, at *5 (W.D. Mich. Jun. 3,

2011), report and recommendation adopted, 2011 WL 3421538 (W.D. Mich. Aug.

4, 2011) ("The narrow scope of judicial review of the Commissioner's final

administrative decision does not include reweighing evidence, deciding questions

of credibility, or substituting the court's judgment for that of the ALJ.") (citations

omitted).  And, as discussed more fully below, the undersigned finds no error in

the weighing of the medical opinion evidence which would affect the Court's

finding regarding the RFC.

> 2.    Treating Physicians

Plaintiff contends that the ALJ did not properly weigh the opinions of Dr.

Wylie and Dr. Deshpande regarding limitations associated with her neck and back

pain.  The opinion of a treating physician should be given controlling weight if it

is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion.  The reasons provided must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the

supportability of the treating physician's opinion or its consistency with other

evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462,

470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two

treating physicians or failure to give good reasons for discounting them where ALJ

thoroughly explained other medical evidence that indirectly attacked the

consistency of the treating physicians' opinions).  In *Coldiron*, the court held that

even if the ALJ's stated reasons for rejecting a physician's opinion were not "good

reasons," the ALJ sufficiently indirectly attacked the supportability and

consistency of the opinion such that any error was harmless.  391 Fed. Appx. at

440-41.  The court found that the ALJ indirectly attacked the consistency of the

opinion that the plaintiff could not lift or carry any weight at all, when the ALJ

explained that the state agency physicians found that the plaintiff lacked a

"diminished capacity for lifting/carrying."  *Id.*  And although the physician stated

that plaintiff could walk for only twenty minutes in an eight-hour workday and his

ability to sit was limited, other medical evidence showed that he could stand and sit

for six hours out of eight.  *Id.* at 441.  Further, the plaintiff's own statements also

undermined the doctor's opinion.  *Id.*

Plaintiff criticizes the ALJ's weighing of Dr. Wylie's opinions.  The ALJ

discussed Dr. Wylie's "opinions" as follows:

> I gave little weight to the conclusions by Dr. Wylie in a
> disability impairment questionnaire completed in April

2015 and again in November 2015.  On these documents,
the doctor references diagnoses of chronic low back pain,
fibromyalgia, irritable bowel syndrome, cervical
radiculitis, migraine headaches, sleep apnea, and
narcolepsy. He indicated she would likely miss more than
three days of work a month, but failed to complete the
residual functional capacity portion of the assessment.
Nevertheless, absent any the listing of any specific
functional limitations, he concluded she was disabled.
Although Dr. Wylie has a treating relationship with
claimant, his findings are inconsistent with the
substantial evidence of record and his own medical
records maintained for the purpose of treatment and not
designed to "assist" his patient at a disability hearing.
This opinion also did not provide a functional assessment
and did not take into account claimant's obesity.  Further,
findings of disability remain reserved for the
Commissioner (Ex. B9F).

(Tr. 31).  Plaintiff finds fault with the ALJ's criticism of the lack of functional

assessment by Dr. Wylie and points out that he deferred this assessment to Dr.

Deshpande.

On January 29, 2015, Dr. Deshpande, plaintiff's treating physician, opined

that plaintiff "will be severely limited from the ability to perform sedentary

activity."  (Tr. 366).  He explained that, due to back pain, sitting or standing for

any extended period of time would lead to pain symptoms intermittently several

days a week or several days per month, requiring her to lie down and stretch for

15-30 minutes to improve the pain symptoms across her back.  Dr. Deshpande

opined that, because of her neck, plaintiff was limited in her ability to pushing and

pull or keep the head and an immobile position such as when working on a

computer screen or filling out paper work.  He also indicated that she was limited in her lifting activities at an above the shoulder level, because that would increase her pain symptoms.  Dr. Deshpande further states that plaintiff's medications may also limit her cognitive capacity and times and limited her ability to perform some higher level sedentary activities.  (Tr. 366).  The ALJ gave little weight to Dr. Deshpande's opinions that plaintiff was "unable to work," had a "disability", and was contradictorily "limited to sedentary exertion work."  (Tr. 31).  The ALJ also observed that Dr. Deshpande did not support his conclusions with medical findings and did not specify the duration of her inability to work.  The ALJ also concluded that the medical evidence did not support the level of impairment that statements regarding the ultimate issue of disability are reserved to the Commissioner.  (Tr. 31).

Plaintiff maintains because these opinions are uncontradicted, they must be given complete deference, citing *McLean v. Comm'r of Soc. Sec.*, 360 F.Supp.2d 864, 872 (E.D. Mich. 2005).  The Commissioner asserts that substantial evidence supports the ALJ's decision that these opinions were unsupported by, or inconsistent with, other medical evidence and that any error in weighing the opinions is harmless because the opinions are patently deficient.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including

your symptoms, diagnosis and prognosis, what you can still do despite

impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527.

Neither Dr. Deshpande's nor Dr. Wylie's statements explain how plaintiff's

symptoms keep her from working at her full capacity or otherwise describe what

she can still do despite her impairments.  Plaintiff wants the ALJ to accept their

opinions regarding her limitations.  Dr. Wylie does not place any specific

limitations on plaintiff and indeed, says that he is not qualified to do so.  This

undermines his opinion that she would have to miss a few days of work per month,

which is really the only functional limitation in his opinion.  Dr. Deshpande's

opinions regarding plaintiff's functioning, such as that she is "severely limited" in

performing "sedentary activity" and that "extended" sitting or standing would lead

to increased pain either a few times a week or a few times a month, are so vague

that they do not reasonably inform plaintiff's functional abilities.  *Poulin v.*

*Comm'r of Soc. Sec.*, WL 1052610, at *11 (W.D. Mich. Mar. 18, 2014) (Where

treating physician failed to articulate any specific functional limitation from which

the plaintiff allegedly suffers and offered vague generalities concerning the

plaintiff ability to work, it was not error for an ALJ to fail to accord controlling

weight to such a vague and generalized opinion.) (citing *Ritter v. Comm'r of Soc.*

*Sec.*, 2013 WL 427572 at *5 (S.D. Ohio Feb. 4, 2013); *Bennett v. Comm'r of Soc.*

*Sec.*, 2011 WL 1230526 at *4 (W.D. Mich. Mar. 31, 2011)).

For this same reason, even if the ALJ did not provide sufficiently good reasons for rejecting plaintiff's treating physician opinions, the undersigned finds any such error harmless.  A violation of the good reasons rule may be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation."  *Allen v. Comm'r of Soc. Sec.*, 2013 WL 5676254, at *14 (E.D. Mich. Sept. 13, 2013 (citing *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010)).

The purported "functional limitations" found in Dr. Deshpande's opinions are so vague that they cannot be credited.  Indeed, the opinions simply do not translate into functional limitations that can be properly incorporated into an RFC: plaintiff "will be severely limited from the ability to perform sedentary activity"; due to back pain, sitting or standing for any extended period of time would lead to pain symptoms intermittently several days a week or several days per month, requiring her to lie down and stretch for 15-30 minutes to improve the pain symptoms across her back; because of her neck, plaintiff was limited in her ability to pushing and pull or keep the head and an immobile position such as when working on a computer screen or filling out paper work; plaintiff was limited in her

lifting activities at an above the shoulder level, because that would increase her

pain symptoms; plaintiff's medications may also limit her cognitive capacity and

times and limited her ability to perform some higher level sedentary activities. (Tr.

366). Dr. Deshpande did not explain how plaintiff was limited or whether she

could only do certain activities for a certain amount of time in each day, or what

those "sedentary activities" might be. *See e.g.*, *Mosby-Clark v. Comm'r of Soc.

Sec.*, 2018 WL 2426126, at *3 (E.D. Mich. May 30, 2018) ("Dr. Roberts'

indication of 'reduced activity' does not speak to Plaintiff's ability to fulfill the

requirements of light work. In other words, it is too vague to express that Plaintiff

cannot perform the standing or walking required for this job classification.");

*Bruce v. Comm'r of Soc. Sec.*, 2010 WL 5932326, at *8 (E.D. Mich. Dec. 9, 2010),

report and recommendation adopted, 2011 WL 833792 (E.D. Mich. Mar. 4, 2011)

(Treating physician opinion that plaintiff's pain was causing her "difficulty in

performing her activities of daily living" "does not state any necessary

'restrictions' and is too vague to lend any insight into the doctor's opinions as to

Plaintiff's specific abilities."); *Pugh v. Comm'r of Soc. Sec.*, 2015 WL 419000, at

*14 (N.D. Ohio Feb. 2, 2015) ("[B]ecause of the lack of specific functional

limitations, Dr. O'Connor's opinion was not well supported."). Here, the opinions

provided by Dr. Deshpande and Dr. Wylie are too vague to provide any insight to

plaintiff's specific functional abilities and thus, any error in weighing them under the treating physician rule is harmless.

### 3.   Credibility

Plaintiff asserts that the ALJ failed to properly analyze her credibility. According to plaintiff, a closer review of the record shows that she could perform minimal and basic household chores, but her condition, symptoms, and medication regimen severely limited her ability to function and rendered her unable to work. Plaintiff contends that the ALJ's credibility analysis was "boilerplate."  In response, the Commissioner points out that plaintiff fails to identify any particular errors in the evaluation of her symptoms and asserts that the ALJ thoroughly discussed the evidence in evaluation her allegedly disabled symptoms.  (Tr. 27-32). Further, the Commissioner says that plaintiff identifies no errors in how the ALJ described her activities, including household chores.  And further, the Commissioner says that, in evaluating plaintiff's credibility the ALJ thoroughly discussed the medical evidence, which showed no significant abnormalities, mentioned plaintiff's relatively conservative treatment, plaintiff's work history, and plaintiff's daily activities.  The Commissioner contends that absent some more specific assertion of error, plaintiff has waived her challenge to the credibility assessment.

In the view of the undersigned, plaintiff's credibility challenge is perfunctory and undeveloped.  "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived."  *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citations omitted) (abrogated on other grounds as recognized by *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015)); *see also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and citations omitted). The undersigned agrees with the Commissioner that the credibility argument presented by plaintiff's counsel is not well developed, and in fact is so perfunctory that it should be deemed waived.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: September 6, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>September 6, 2018</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: <u>Julie Marie Acosta, 304 East Main Street, Stockbridge, MI 49285.</u>

<u>s/Tammy Hallwood</u><br>
Case Manager<br>
(810) 341-7850<br>
<u>tammy_hallwood@mied.uscourts.gov</u>